# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY HUDAK | : |
| Plaintiff, | : |
| v. | :    3:16-CV-288 |
| | :    (JUDGE MARIANI) |
| BENJAMIN CLARK, et al. | : |
| Defendants. | : |

## MEMORANDUM OPINION

### I. INTRODUCTION

On February 18, 2016, Plaintiff Jeffrey Hudak initiated the above-captioned action arising out of events which occurred on September 13, 2014, following the shooting of Pennsylvania State Troopers Bryon Dixon and Alex Douglass at the Pennsylvania State Police Barracks in Blooming Grove. Plaintiff's Amended Complaint against Defendants Benjamin Clark, Kyle Hnat, Thomas Bachman, Richard Janesko, Jennifer Kosakevitch, and Sandra Van Luvender, contains a single count for "Unlawful Seizure/Wrongful Arrest/False Imprisonment" (Doc. 22).

In April, 2018, the Court granted Plaintiff's motion for partial summary judgment (Doc. 30), finding that "because there is no genuine dispute of fact that probable cause was lacking in this case, the absence of probable cause shall hereby be treated as having been established for purposes of trial." (See Docs. 38, 39).

Trial is now scheduled to commence on August 27, 2018. (Doc. 41).

Presently before the Court are the following *in limine* motions by the parties:

1. Plaintiff's Motion in Limine to Preclude Evidence or Testimony Regarding Plaintiff's Relationship with his Ex-Wife (Doc. 46);

2. Plaintiff's Motion for Spoliation Instruction (Doc. 48);

3. Defendants' Motion in Limine to Preclude Testimony Relating to the *Delade* Case (Doc. 50);

4. Defendants' Motion in Limine to Preclude Testimony of Bernard Brown (Doc. 52).

The Court will address these motions in turn.

## II. STANDARD OF REVIEW

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *United States v. Tartaglione*, 228 F.Supp.3d 402, 406 (E.D. Pa. 2017). A court may exercise its discretion to rule in limine on evidentiary issues "in appropriate cases." *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). Nevertheless, a "trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *Tartaglione*, 228 F. Supp. 3d at 406.

Further, while motions in limine may serve as a useful pretrial tool that enables more in-depth briefing than would be available at trial, a court may defer ruling on such motions "if the context of trial would provide clarity." *Frintner v. TruePosition*, 892 F.Supp.2d 699, 707 (E.D. Pa. 2012). Indeed, "motions in limine often present issues for which final decision is

2

best reserved for a specific trial situation." *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 518 n.10 (3d Cir. 1997). Thus, certain motions, "especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context." *Leonard v. Stemtech Health Scis., Inc.*, 981 F.Supp.2d 273, 276 (D. Del. 2013). Moreover, "*pretrial* Rule 403 exclusions should rarely be granted. . . . [A] court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990) (emphasis in original).

Finally, it is important to note that "in limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

### III. ANALYSIS

#### 1. Plaintiff's Motion in Limine to Preclude Evidence or Testimony Regarding Plaintiff's Relationship with his Ex-Wife (Doc. 46)

Plaintiff's first motion in limine requests that this Court preclude evidence and testimony regarding Plaintiff's relationship with his "estranged" wife, Nicole Damiano Hudak, who was in a relationship with Trooper Douglass at the time of the Blooming Grove shooting in September, 2014. (Doc. 46). Specifically, Plaintiff asserts that "[t]he only relevant information that should be provided to the jury is that Plaintiff's estranged wife was in a relationship with Trooper Douglass at the time of the Blooming Grove shooting. All other

3

testimony or evidence regarding Plaintiff's relationship with Nicole should be precluded at the time of trial, including evidence of the PFA and any alleged threats made by Plaintiff against Nicole." (Doc. 47, at 9). Plaintiff further supports his position by stating that "none of the Defendants contend that they took any action or that any of their conduct was based upon any alleged information about Plaintiff's relationship with Nicole. . ." and nor could they, "because, at the time Hudak was taken from his mother's house to the Dunmore barracks, the information regarding his past relationship with his ex-wife was not known to any of the Defendants." (*Id.* at 6-7).

Defendants disagree with Plaintiff's assertions and contend that the evidence is relevant for a number of reasons, including that Defendant Kosakevitch testified that "she remembered discussion about a PFA" and that when Defendants Hnat and Clark interviewed Plaintiff, "they were aware of the PFA and the Plaintiff's past dealings with his ex-wife," which informed "how they would proceed with the interview, and why they wanted to interview him." (Doc. 55, at 3-4). Defendants thus claim that "[t]he PFA and interaction between Plaintiff and his ex-wife form the basis for the entire string of events that comprise this lawsuit." (*Id.* at 4).[1]

Under the Federal Rules of Evidence, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of

---

[1] To the extent the Court were to find the evidence on the issue of Plaintiff's relationship with his ex-wife to be unfairly prejudicial, Defendants suggest a limiting instruction "would be a more measured and reasonable way to put the information in its proper context." (Doc. 55, at 5). Should the Court allow evidence of Plaintiff's relationship with his estranged wife, the Court will consider a request for a limiting instruction upon the request of either party.

4

consequence in determining the action." Fed. R. Evid. 401. Irrelevant evidence is not admissible and relevant evidence is admissible unless otherwise provided by the Constitution, federal statute, Federal Rules of Evidence, or other rules prescribed by the Supreme Court. Fed. R. Evid. 402. Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. Even if the Court deems the relevant evidence to be admissible, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602.

In accordance with the Federal Rules, there is no question that any party or witness who lacks personal knowledge of the subject matter about which he or she is called upon to testify will be precluded from testifying as to that issue. However, at this stage in the proceedings, the Court is unable to make a determination as to the contents of any witness's testimony, including whether that person possessed the requisite personal knowledge during the relevant time period in which the witness's actions were undertaken, as well as the relevance of any testimony that person may be qualified to offer.

The Court will thus reserve ruling on Plaintiff's motion. The resolution of the arguments raised in this motion cannot be made outside of the context of the evidence presented at trial as to the actions and knowledge of each individual defendant at the time of the events at issue. If an individual Defendant can establish at the time of trial that he or she had personal knowledge of the PFA and/or past threats by Hudak to his ex-wife prior to, or at the time

he/she first interacted with Hudak, then that specific information may be admissible, subject to all timely objections, including objections as to the relevance of the evidence and danger of unfair prejudice that the evidence may create.

### 2. Plaintiff's Motion for Spoliation Instruction (Doc. 48)

Plaintiff next requests that the Court provide a jury charge regarding Defendants' spoliation of evidence. (Doc. 48). Plaintiff moves for a spoliation instruction based on the destruction of two separate items: a police vehicle video recording and Defendant Hnat's interrogation notes.

According to Plaintiff, and undisputed by Defendants, "[d]uring [Hudak's] transportation in a marked state police vehicle to the state police barracks in Dunmore for interrogation, Plaintiff was video and audio recorded" (Doc. 49, at 2). Defendant Janesko admitted to activating the video and audio recording device in the vehicle without informing Plaintiff. (*Id.*). Pursuant to the Mobile Video/Audio Recording Equipment policy in effect at the time: "All recordings uploaded to MVR servers will be automatically deleted 45 days after the date of the recording. Therefore, recordings required to be duplicated/retained in accordance with this regulation must be duplicated within 45 days of the incident/recording." (Doc. 54-1, at § 12.06(D)). The policy provides for the "mandatory duplication/retention" of recordings, in relevant part, of "incidents which are likely to become the subject of civil litigation against the Department or its personnel . . . ." (*Id.* at § 12.06(A)). The policy

instructs that "Members are responsible for notifying the MVR Custodial Officer of these [mandatory] recordings and the need for duplication and retention." (*Id.*).

It is undisputed in this action that the video and audio recording were not preserved in any form. (*See* Doc. 54, at 1).

Plaintiff contends that the defendants "consciously and deliberately allowed the recordings to be destroyed and recorded over" and that the recordings "would demonstrate that he was under arrest when he was placed in the vehicle and transported to the state police barracks. . . ." (Doc. 49, at 3-4). Defendants raise a number of arguments in response, including that they believe Plaintiff voluntarily agreed and consented to accompany them to the state police barracks, thereby rendering litigation in this action not reasonably foreseeable by the Defendants. They further point to the fact that Plaintiff did not file his lawsuit until 2016, over a year after the MVR recording was deleted. (Doc. 54, at 2-5).

Plaintiff also asserts that when he was interrogated at the state police barracks, he was questioned by Defendant Clark while Defendant Hnat took "detailed notes of . . . the interrogation and the events that took place at the barracks." (Doc. 49, at 4). After preparing a report of the interrogation of Plaintiff in December, 2014, in his deposition, Hnat stated that he "destroyed" the notes, something he routinely does. (*Id.*; Dep. of Hnat, at 10). Defendants admit that Hnat's notes were destroyed following the completion of his report. (Doc. 54, at 2).

In conclusory terms, Plaintiff asserts that:

> Defendant Hnat's handwritten notes would have detailed evidence regarding when Plaintiff signed or initialed various documents and would support Plaintiff's testimony that he did not initial the first page of the Noncustodial Written Statement until noon or later on September 13, 2014. In addition, Defendant Hnat's notes would provide details and timeframes on when Plaintiff requested an attorney, asked to make a phone call and asked to go to the bathroom. Certainly, Attorney Brown's assertion that he was entitled to see his client and Attorney Buttner's assertion that the failure to allow Attorney Brown to see Plaintiff violated Plaintiffs constitutional rights.

(Doc. 49, at 7). In response to Plaintiff's arguments, Defendants again assert that it was not "reasonably foreseeable" for them to assume that litigation would result from the incident at issue. (Doc. 54- at 6-8).

As a result of the destruction of the video tape and Hnat's notes, Plaintiff requests that the Court "include the standard adverse-inference instruction regarding Defendants' spoliation of evidence in its charge to the jury." (Doc. 48, at 10).

Spoliation occurs where "the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." *Bull v. United Parcel Service, Inc.*, 665 F.3d 68, 73 (3d Cir. 2012). The party asserting that spoliation has occurred has the burden of establishing these elements. *See Sarmiento v. Montclair State Univ.*, 513 F.Supp.2d 72, 94 (D.N.J. 2007), *aff'd*, 285 F.App'x 905 (3d Cir. 2008); *Gentex Corp. v. Sutter*, 827 F.Supp.2d 384, 390 (M.D. Pa. 2011).

Here, Defendants do not dispute that the video recording and Hnat's notes were originally within their control. The Court therefore turns to whether Plaintiff has established the other three necessary elements.

With respect to how the missing evidence is relevant to Hudak's claims or defenses in this case, Plaintiff merely states that "it cannot be seriously disputed that the vehicle recordings and interrogation notes are relevant to the claims asserted by Plaintiff." (Doc. 49, at 15). In turn, Defendants do not address the relevance of this evidence, and for purposes of this motion, the Court deems this issue undisputed. (*See generally*, Doc. 54).

Plaintiff offers little argument with respect to the third element of spoliation, whether there has been actual suppression or withholding of evidence. Plaintiff merely contends that "Defendants have not produced the vehicle recordings or interrogation notes, although Plaintiff requested that they do so." (Doc. 49, at 14). While it appears certain that (1) Defendants did not produce the vehicle recording and interrogation notes, and (2) Plaintiff requested this evidence, this alone is insufficient to demonstrate actual suppression or withholding of evidence. Rather, it is undisputed that both the video recording and interrogation notes were destroyed in or before December, 2014, well-over a year before Hudak filed his lawsuit, and Defendants assert that the evidence was destroyed as the result of routine, policies in place, and general practices. The mere fact that Defendants are no longer in possession of the evidence Plaintiff has requested is insufficient to show that spoliation occurred. Indeed, although Courts in this circuit are not in agreement as to what

level of intent is necessary for spoliation to be attributed to a party, see *Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 348 F. Supp. 2d 332, 337 (D.N.J. 2004) (noting that "[s]ome courts in the Third Circuit have construed 'actual suppression' to mean that the evidence must be intentionally or knowingly destroyed or withheld, . . . [while o]thers have used a more flexible approach that defies being labeled as requiring intentional or knowing destruction"), it is clear that an adverse inference instruction is not appropriate in all cases in which a party fails to produce evidence, see *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995)("No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for"). Here, Plaintiff has not come forward with any evidence to demonstrate that the information he seeks was destroyed either negligently or intentionally, or for any reason other than routine practices.

Finally, spoliation requires that there was a duty to preserve the evidence which was reasonably foreseeable to the party. A party who reasonably anticipates litigation has an affirmative duty to preserve relevant evidence. *Baliotis v. McNeil*, 870 F.Supp. 1285, 1290 (M.D. Pa. 1994). The duty arises whenever "the party in possession of the evidence knows that litigation by the party seeking the evidence is pending or probable and the party in possession of the evidence can foresee the harm or prejudice that would be caused to the party seeking the evidence if the evidence were to be discarded." *Kounelis v. Sherrer*, 529

F.Supp.2d 503, 518 (D.N.J. 2008) (citing *Joe Hand Promotions v. Sports Page Cafe*, 940 F.Supp. 102, 104 n.13 (D.N.J.1996); *Baliotis*, 870 F.Supp. at 1290).

Here, the parties strongly dispute whether Hudak's litigation was foreseeable to the defendants. Plaintiff argues that "[u]nder the facts of the instant case, Defendants knew – or reasonably should have known – by September 13, 2014, or within a few days thereof, that they had unlawfully arrested Jeffrey Hudak, causing a violation of his civil rights that would result in litigation" and that Defendants knew, or should have known, that Plaintiff would request the evidence now at issue. (Doc. 49, at 7). Defendants however assert that, because Hudak "voluntarily agreed to accompany them to the State Police barracks", litigation was not reasonably foreseeable to them. (Doc. 54, at 1, 2, 7).

A determination of whether litigation in this action was, or should have been, reasonably anticipated by the defendants turns on several fundamental factual disputes at issue in this action and requires this Court to make a number of credibility assessments and legal determinations prior to hearing or seeing any evidence. At this time, the Court is not in a position to determine whether Defendants had a duty to preserve the video recording and Hnat's interrogation notes on the basis that it was reasonably foreseeable to them that litigation would ensue as a result of the events of September 13, 2014.

For the aforementioned reasons, Plaintiff has not clearly established the four necessary elements required to demonstrate spoliation. The Court will therefore deny Plaintiff's motion, however, such denial is without prejudice to Plaintiff renewing his request

following the presentation of all testimony on this issue at trial. Should Plaintiff choose to renew this request, Plaintiff has the burden at trial of establishing the four necessary elements required to demonstrate spoliation and that an adverse inference is appropriate. Because it appears undisputed that the evidence was in the Defendants' control and the evidence is relevant to Plaintiff's claims, of particular significance in a renewal of his request are elements three and four of a spoliation analysis, and specifically, what level of intent, if any, the relevant Defendants had in destroying the video recording and Hnat's notes, and whether Defendants had any duty to preserve the evidence or to reasonably anticipate litigation.

### 3. Defendants' Motion in Limine to Preclude Testimony Relating to the *DeLade* Case (Doc. 50)

In March, 2016, Donald DeLade filed a civil action against a number of Pennsylvania State Troopers alleging violations of his constitutional rights as result of events which occurred following the shooting of Pennsylvania State Troopers Dixon and Douglass at the Pennsylvania State Police Barracks in Blooming Grove. (*See* 3:16-cv-415-RDM (M.D. Pa.)). Although Mr. DeLade's original Complaint named as Defendants Norman Strauss III, John Oliver, John Cargan, Bryan Fedor, Stephen Polishan, and John Does 1-6 (*id.* at Doc. 1), DeLade's Amended Complaint (*id.* at Doc. 38), which is the operative Complaint in that action, names only Pennsylvania State Police Trooper John Cargan as a defendant.

Here, Defendants' first motion in limine requests that Plaintiff be barred from using any evidence regarding the *DeLade* case. Defendants argue that "[t]he fact that another

individual was investigated – who ultimately turned out not to be the perpetrator – has absolutely no bearing on whether or not the Plaintiff's Fourth Amendment rights were violated and whether or not he voluntarily consented to be interviewed by the Defendants in the instant case." (Doc. 50, at ¶ 4).

In support of their motion, Defendants assert that none of the Troopers who investigated Mr. DeLade are defendants in the present action, and that the Troopers involved in the *DeLade* action transported Mr. DeLade to the Pennsylvania State Police Barracks in Honesdale, whereas Mr. Hudak was taken to the Dunmore barracks. (*See* Doc. 51, at 2-3). Plaintiff does not dispute either of these assertions. Further, Plaintiff "agrees that DeLade's unlawful arrest and detention has no bearing on whether Plaintiff was arrested." (Doc. 59, at 3). Instead, Plaintiff opposes Defendants' motion on the basis that evidence of the *DeLade* case "does have a bearing on Defendants' state of mind and the question of whether Defendants knew that what they were doing was improper and illegal and whether they acted with reckless disregard for Plaintiff's constitutional rights." (*Id.* at 3-4).

Plaintiff's opposition is without merit. Here, evidence relating to the *DeLade* case is irrelevant. As Plaintiff admits, the actions taken against Mr. DeLade have no bearing on the issue to be decided by the jury: whether Mr. Hudak was unlawfully seized or detained in violation of his Constitutional rights. Even if one or more defendants in the present action were aware that other Troopers in Honesdale were investigating other individuals, this has no bearing on whether Mr. Hudak's constitutional rights were violated. Plaintiff offers no

explanation for how any purported knowledge on the defendants' part that one or more individuals were also being investigated for the same shooting can somehow be converted into evidence that Defendants' actions in the present case were "improper and illegal."

Finally, the Court notes that despite all of the allegations set forth in *DeLade v. Cargan*, a motion for summary judgment is currently pending in that action and thus none of the factual allegations set forth in that action have yet been established as a matter of law. The fact that *DeLade* is currently unresolved and the facts of that action are subject to a number of disputes renders any evidence and assertions regarding that case even more speculative in nature and likely to confuse the jury as to what facts are relevant to this case.

For the aforementioned reasons and pursuant to Rules of Evidence 401 and 402, the Court will grant Defendants' motion to preclude testimony relating to the *DeLade* case.

### 4. Defendants' Motion in Limine to Preclude Testimony of Bernard Brown (Doc. 52)

Defendants' second motion in limine requests that the Court preclude Plaintiff's use of the testimony of Bernard Brown, Esquire, at trial. (Doc. 52). Defendants assert that Brown's testimony is not relevant to a determination of whether Hudak's Fourth Amendment rights were violated and whether Hudak voluntarily went with the defendants to the state police barracks. Defendants further argue that, even if the testimony were relevant, "the testimony runs afoul of Rule 403 of the Rules of Evidence." (Doc. 53, at 4).

Having not yet heard any testimony in this action, nor seen any of the evidence to be presented, the Court is not in a position to assess the relevancy or prejudicial value of any

testimony Attorney Brown may offer at trial. However, because there is a possibility that Attorney Brown may be able to offer testimony relevant to Plaintiff's claims, the Court will not preclude Attorney Brown from taking the stand and allowing Plaintiff to attempt to elicit admissible testimony.

Defendants' motion to preclude Attorney Brown from testifying in his entirety will thus be denied. However, the Court will reserve with respect to the admissibility of each and every statement by Attorney Brown that is subject to proper and timely objection at trial. In so ruling, the Court does not reach the relevance or admissibility of any testimony that Brown may offer.

## IV. CONCLUSION

For the forgoing reasons, the parties' motions (Docs. 46, 48, 50, 52) will be decided as set forth in this Memorandum Opinion. The rulings, however, do not alter the parties' responsibility to raise their objections at the appropriate time at trial, if warranted in light of the evidence adduced by that time. A separate Order follows.

Robert D. Mariani
United States District Judge